

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ──────────────── : | | |
| EMMANUEL JONES, : | | |
| : | Civ. Action No. 13-3748 (SRC) | |
| Petitioner, : | | |
| : | | |
| v. : | **OPINION** | |
| : | | |
| UNITED STATES OF AMERICA, : | | |
| : | | |
| Respondent. : | | |
| ──────────────── : | | |

**CHESLER**, United States District Judge

This matter comes before the Court on Petitioner Emmanuel Jones's ("Jones") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Jones v. United States, 13-cv-3748 (SRC) (ECF No. 5.)) Jones alleged he was denied effective assistance of counsel, causing him to plead guilty to a crime he did not commit. For the reasons discussed below, the § 2255 motion is denied.

I. BACKGROUND

Jones's plea allocution sets forth the following facts. In 2004, Jones became a member of the Fruit Town and Brick City Brims set of the Bloods. United States v. Jones, 07-cr-143-1 (D.N.J.) (Plea Allocution, ECF No. 366 at 21, 23.)) He was a member of the gang at the time of his arrest in this matter. Id.

1

The Fruit Town and Brick City Brims had a leadership structure and hierarchy. (Id. at 22.) Responsibilities of gang members included giving other members status or rank within the set, collecting funds for use in bailing out members from jail, settling disputes, deciding on punishment of members for rules infractions, and approving violent acts against members or non-members of the gang. (Id. at 23.) The Fruit Town Brims adhered to rules that Bloods members must retaliate against those who harm or disrespect the gang or a member of the gang. (Id.)

Jones conspired with others in the gang to "commit at least two criminal acts in furtherance of the enterprise." (Id.) On July 19, 2004, Jones learned that a non-gang member, S.J., had fired a gun at a Fruit Town Brim member, Anthony Walker, near the corner of Wilkinson Avenue and Martin Luther King Drive in Jersey City. (Id. at 24.) Jones agreed with co-conspirators, including Levon Harris, Torien Brooks, Matthew Turner, Anthony Walker, David Ariste, and others, that there would be a violent retaliation against S.J. (Id.) As part of the retaliation, Jones went with Levon Harris, Torien Brooks and others in a van to find S.J. (Id.) Jones and Brooks got out of the van to look for S.J. on Wilkinson Avenue. (Id.) Jones had a .40 caliber gun with him, and he knew Brooks also had a gun. (Id. at 24-25.)

Jones went up to a person whom he believed was S.J., but who was actually M.T., and shot him in the head and body. (Id.

2

at 25.) Brooks was standing behind Jones when Jones approached M.T., and Jones heard Brooks fire his gun. (Id.) At the time of his guilty plea, Jones was aware that the person he killed was not S.J. but was M.T. (Id.)

On November 9, 2004, Jones was arrested by the Hudson County Prosecutor's Office for his role in murdering M.T. (Jones v. United States, 13-cv-3748, ECF No. 5-1 at 4-5.) He was indicted in state court on June 21, 2005. (Id.) The FBI subsequently began an investigation into the FTB. (Id.)

Jones and C.C., both of whom were members of the Fruit Town Brims and incarcerated in Hudson County Jail in 2006, had a dispute over C.C.'s leadership status in the gang. (United States v. Jones, 07-cr-143-1, ECF No. 366 at 26.) As a result of that dispute, Jones declared to the gang that C.C. was "food," meaning they should kill him. (Id. at 26-27.) On October 3, 2006, a member of the Fruit Town Brims attempted to kill C.C. by striking him with a broom handle, causing him to fall down a flight of stairs. (Id. at 27.)

On February 27, 2007, an AUSA met with Jones and his defense attorney, A. Paul Condon, regarding the State charges. (Jones v. United States, 13-cv-3748, ECF No. 5-1 at 5.) The AUSA informed Jones that if he rejected the State's plea offer rather than going to trial that day, he would possibly face the death

3

penalty on federal charges. (Id.) Jones rejected the State's
plea offer.

That same day, a federal indictment was unsealed and
charged Jones and four others in the murder of M.T. (United
States v. Jones, 07-cr-143-1, ECF No. 1.) Condon was
subsequently appointed as federal defense counsel, along with
David Ruhnke. (United States v. Jones, 07-cr-143-1, ECF Nos. 15
and 30.) Hudson County dismissed the State charges. (Jones v.
United States, 13-cv-3748, ECF No. 5-1 at 5.) A death penalty
review was then held on the federal charges.

After a hearing on Jones's pretrial motions, trial was
delayed while Jones sought to show he was incompetent to stand
trial. (United States v. Jones, 07-cr-143-1, ECF Nos. 106, 110-
11, 118, 123, 126-27, 150.) On April 23, 2008, the Government
announced that it would not seek the death penalty. (United
States v. Jones, 07-cr-143-1, ECF No. 48.) The Government's
expert, Dr. John S. O'Brien, found that Jones was malingering to
avoid prosecution. (United States v. Jones, 07-cr-143-1, ECF
Nos. 154, 157.) On May 17, 2010, Jones was found competent to
stand trial. (United States v. Jones, 07-cr-143-1, ECF No. 157.)
Meanwhile, the grand jury returned a superseding indictment
against Jones on December 12, 2008. (United States v. Jones, 07-
cr-143-1, ECF No. 102).

4

The Government continued its investigation, and on January 14, 2011, the grand jury returned an extensive second superseding indictment against Jones and fourteen other gang members. (United States v. Jones, 07-cr-143-1, ECF No. 177.) The indictment added a charge of racketeering conspiracy. (Id. at 2-21.)

Jones pled guilty to racketeering conspiracy on July 13, 2011. (United States v. Jones, 07-cr-143-1, ECF Nos. 257-59.) In the plea agreement, the parties agreed to a total offense level of 40 for sentencing, taking into account only the two racketeering acts mentioned in Jones's plea allocution. (United States v. Jones, 07-cr-143-1, ECF No. 259 at 8.) This reduced Jones's advisory guidelines range to 360 months to life. (Id. at 8-9.) The parties agreed that a sentence of 360 months was reasonable. (Id. at 9.) Jones waived his appeal rights, including collateral review under 28 U.S.C. § 2255. (Id.)

Prior to sentencing, Jones wrote a letter to the Court expressing remorse for what he did. (United States v. Jones, 07-cr-143-1, ECF No. 365 at 4.) At the hearing, Jones again expressed his remorse about M.T. (Id. at 4.) Jones admitted he was involved in a violent gang, and he was misguided in his actions. (Id.) On June 8, 2012, Jones was sentenced to 360 months imprisonment, $11,815 in restitution, and a five-year term of supervised release. (Id. at 13, 15-16.) The Government

dismissed Counts 2-11 of the second superseding indictment. (Id. at 18.) As agreed, Jones did not pursue a direct appeal.

Jones, however, filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 on June 17, 2013, and amended the motion on August 26, 2013. (Jones v. United States, 13-cv-3748, ECF Nos. 1, 5.) On February 6, 2015, Respondent filed an answer and motion in opposition to Jones's 2255 motion. (Jones v. United States, 13-cv-3748, ECF No. 13.) On April 2, 2015, Jones filed a response. (Jones v. United States, 13-cv-3748, ECF No. 15.) The motions are ripe for review.

## II. STANDARD OF REVIEW

A prisoner in custody pursuant to a federal court judgment and conviction may move the court that imposed the sentence to vacate, set aside or correct the sentence, if the sentence was imposed in violation of the Constitution or laws of the United States; or if the court was without jurisdiction to impose such sentence; or if the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)). "The district

6

court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" Id. For the reasons discussed below, the records of the case conclusively show that Jones is not entitled to relief, and thus the Court will not hold in evidentiary hearing in this matter.

III.  DISCUSSION

    A. Jail Credit

    Jones alleged five grounds for relief in his § 2255 motion. In his fifth ground for relief, Jones seeks credit for time served in State custody, beginning July 1, 2004, toward his federal sentence. "The authority to calculate a federal prisoner's period of incarceration for the federal sentence imposed and to provide credit for time served is delegated to the Attorney General, who acts through the BOP." Galloway v. Warden of F.C.I. Fort Dix, 385 F. App'x 59, 62 (3d Cir. 2010) (quoting United States v. Wilson, 503 U.S. 329, 334-35 (1992)). Therefore, a motion under § 2255 is not the proper vehicle for relief in challenging the BOP's sentence calculation. See United States v. Grimes, 641 F.2d 96, 99 (3d Cir. 1981) (holding that when the petitioner requested credit on his federal sentence for time spent in state custody, the proper avenue for relief was under 28 U.S.C. § 2241).

Moreover, "[f]ederal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Armstrong v. Grondolsky, 341 F. App'x 828, 831 (3d Cir. 2009) (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996)). Thus, Jones should seek relief through the BOP's administrative procedures, and then, if necessary, he should file a petition under 28 U.S.C. § 2241, challenging the BOP's sentence calculation. Ground Five of the motion will be dismissed.

B. Enforceability of Waiver

In his remaining grounds for relief, Jones argued that he pled guilty, although he is innocent of killing M.T., because his attorney provided ineffective assistance of counsel. Jones, however, waived his right to collaterally attack his conviction and sentence in his Plea Agreement. The Court must first consider whether the waiver is enforceable.

Waiver of the right to file a collateral attack under 28 U.S.C. § 2255 may be valid if the waiver was knowing and voluntary, and enforcement of the waiver would not "work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). "A court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of

8

justice, based on the record evidence before it." <u>Id.</u> (citing
<u>United States v. Khattak</u>, 273 F.3d 557, 563 (3d Cir. 2001)).

In this case, Jones signed a plea agreement that contained
a waiver of his right to bring a motion under 28 U.S.C. § 2255.[1]
The Plea Agreement, in careful detail, spells out the terms upon
which Petitioner agreed to enter a guilty plea. Above Jones's
signature on the Plea Agreement is the following paragraph:

> I have received this letter from my attorneys,
> Paul Condon, Esq. and David Ruhnke, Esq. My
> attorneys and I have discussed the letter and
> all of its provisions, including the
> provisions addressing the charge, sentencing,
> the stipulations, waiver, forfeiture, and
> immigration and registration consequences. I
> understand the letter fully. I hereby accept
> the terms and conditions set forth in this
> letter and acknowledge that it constitutes the
> plea agreement between the parties. I
> understand that no additional promises,
> agreements, or conditions have been made or
> will be made unless set forth in writing and
> signed by the parties. I want to plead guilty
> pursuant to this plea agreement. [dated 05-
> 16-2011].

(<u>United States v. Jones</u>, 07-cr-143-1, ECF No. 259, at 6.)

There is also a paragraph above the signatures of Jones's
attorneys, which provides:

> I have discussed with my client this letter
> and all of its provisions, including the
> provisions addressing the charge, sentencing,
> the stipulations, waiver, forfeiture, and
> immigration consequences. My client

---

[1] In the Plea Agreement, Jones retained the right to challenge
his criminal history score, but he does not do so here.

> understands the letter fully and wants to
> plead guilty pursuant to this plea agreement.

(Id.)

The Court further notes that in his written application for permission to enter a guilty plea, Jones acknowledged:

> 3.   I have a lawyer who is representing me in
> this proceeding. My lawyer's name is Paul
> Condon/David Ruhnke. I am satisfied that I
> have had enough time to discuss this matter
> with my lawyer.
> . . .
>
> 7. I received a copy of the [INDICTMENT]
> before being called upon to plead. I have read
> and discussed it with my lawyer. I understand
> that the substance of the charge(s) against me
> is that I: conspired with others as part of
> Racketeering Enterprise. To that end, it's
> alleged I committed a homicide & an attempted
> homicide.
>
> . . .
>
> 15. I have told my lawyer all the facts and
> circumstances known to me about the charge(s)
> set forth in the INDICTMENT.
>
> 16. I am satisfied that my lawyer understands
> the information which I have provided, and
> that my lawyer has counseled me on the nature
> of each charge and on all possible defenses
> that I might have in this case.
>
> . . .
>
> 36. I declare that I have not been forced or
> threatened in any manner by any person to
> plead guilty to these charge(s). Nor have I
> been told that if I refuse to plead GUILTY,
> other persons will be prosecuted.
>
> . . .

> 42. I believe that my lawyer has done all that
> anyone could do to counsel and assist me, AND
> I AM SATISFIED WITH THE ADVICE AND HELP MY
> LAWYER HAS GIVEN ME.
>
> 43. I know the judge will not permit anyone to
> plead GUILTY who claims to be innocent, and
> with that in mind and because I am GUILTY, I
> respectfully request that the Court accept my
> plea of GUILTY and to have the Clerk enter my
> plea of GUILTY as follows:
> To Count(s) 1 of this INDICTMENT.
>
> 44. I offer my plea of GUILTY freely and
> voluntarily and of my own accord with full
> understanding of all matters set forth in the
> INDICTMENT in this application, and in the
> certification of my lawyer which is attached
> to this application. . . .

This application was signed by Jones in open court on
July 13, 2011. (United States v. Jones, 07-cr-143-1,
ECF No. 258 at 1-7) (emphasis in original.)

Importantly, the transcript of the plea colloquy before
this Court (United States v. Jones, 07-cr-143-1, ECF No. 366)
contains Jones's oral acknowledgment that he knowingly and
voluntarily agreed to the terms of the plea agreement, and
waived his right to collaterally attack the conviction and
sentence under 28 U.S.C. § 2255. At the hearing, this Court
stated:

> Now, normally a defendant who's convicted in
> federal court has a right to appeal the
> conviction and sentence and to make other
> types of post conviction attacks and
> challenges to the sentence or the conviction
> if he thinks a conviction or the sentence is

illegal   or   otherwise   improper.   Do   you
understand that sir?

THE DEFENDANT: Yes.

THE COURT: If you'll please take a look at
paragraph 19, you agree that if I give you a
sentence to a term of imprisonment which is
one of 30 years imprisonment or less, you will
not appeal the conviction or sentence or make
any other type of post conviction attack or
challenge to the conviction or sentence with
one exception and, that is, you've reserved
the right to challenge my criminal history
calculation. But apart from that, you give up
any other right to appeal or attack the
conviction or sentence if I give you a
sentence of 30 years or less. Do you
understand that?

THE DEFENDANT: Yes.

. . .

THE COURT: Do you understand that if I give
you a sentence of 30 years of imprisonment
or a sentence which is lower than that, you
will never ever again be able to challenge
the sentence or the conviction in this case
in any way, shape or form except to
challenge the criminal history calculation?

THE DEFENDANT: Yes.

THE COURT: Do you understand that? Do you
agree to that sir?

THE DEFENDANT: Yes.

(United States v. Jones, 07-cr-143-1, ECF No. 366 at 16-17.)

Here, Jones's waiver of collateral appeal rights was made

knowingly and voluntarily. A court may, however, invalidate the

waiver if the petitioner presents an error that, if unaddressed,

12

amounts to a miscarriage of justice. Mabry, 536 F.3d at 242.
When deciding whether the waiver is invalid, the court should
consider the following factors: (1) the clarity, gravity and
character of the error; (2) the impact of the error on the
defendant; (3) the impact of correcting the error on the
government; and (4) the extent to which the defendant acquiesced
in the result. Id. at 242-43 (quoting United States v. Teeter,
257 F.3d 14, 25-26 (1st Cir. 2001)).

Under certain circumstances, ineffective assistance of
counsel may create a miscarriage of justice that requires a
court to invalidate the petitioner's waiver of his right to
collaterally attack his guilty plea. See United States v.
Shedrick, 493 F.3d 292, 298 (3d Cir. 2007) ("[e]nforcing a
collateral-attack waiver where constitutionally deficient
lawyering prevented [the petitioner] from understanding his plea
or from filing a direct appeal as permitted by his plea
agreement would result in a miscarriage of justice.") This is
the context within which the Court addresses Jones's ineffective
assistance of counsel claims.

In Grounds One through Three of his § 2255 motion, Jones
alleged multiple instances of ineffective assistance of counsel,
including (1) failure to investigate and interview witnesses;
(2) failure to investigate exonerating evidence; and (3) failure
to preserve speedy trial right. Jones further alleged he is

13

innocent of killing M.T., and he pled guilty due to counsel's ineffective assistance. (Jones v. United States, 13-cv-3748, ECF No. 15).

The Court first addresses the fourth factor in the Mabry test of the validity of the waiver, the extent to which the defendant acquiesced in the result. The fourth factor weighs heavily in favor of upholding the waiver of § 2255 proceedings. The above-described documents signed by Jones, and the plea colloquy with this Court, establish that Jones fully acquiesced in the plea agreement and the waiver of his collateral appeal rights.

Moreover, all of the information Jones provided in support of his claims that counsel was ineffective was available to him before he made the decision to plead guilty. For example, Jones had the opportunity to tell the Court during the plea colloquy that he was innocent, based on Hicks's confession. Jones could have informed the Court that he was only pleading guilty because counsel had not adequately investigated alibi witnesses, exonerating evidence, or pursued dismissal or other relief based on violation of his speedy trial rights. By not speaking up, Jones acquiesced in giving up his right to raise these issues in a collateral attack on his conviction and sentence.

The Court must still consider whether the following three factors outweigh Jones's acquiescence in the result of the plea

14

agreement: (1) the clarity, gravity and character of counsel's alleged error; (2) the impact of the error on the defendant; (3) and the impact of correcting the error on the government. The second and third factors are in balance here because if this case were reopened for a new trial both parties would be impacted by the passage of time, the loss of memory, and potential loss of evidence. See United States v. Cannistraro, 800 F. Supp. 30, 57 (D.N.J. 1992) (noting "the Government faced the same risk that its witnesses would die or the memories of its witnesses would fade as a result of the decision not to bring the Indictment" sooner).

Of course, if Jones is innocent of the crime to which he pled guilty, failure to correct the error would have a greater impact on him than on the Government. As discussed below, Jones's claim of actual innocence is not credible. Therefore, the second and third factors do not weigh in favor of finding that a miscarriage of justice would result if the waiver is enforced. The Court will address the remaining factor concerning the validity of the waiver: the clarity, gravity and character of the alleged errors of counsel.

### 1. Failure to Investigate and Interview Witnesses

Jones alleged trial counsel was ineffective by failing to investigate and interview two eyewitnesses who could not identify Jones in a line-up, and four alibi witnesses whom Jones

disclosed to counsel. First, counsel discovered the eyewitnesses who failed to identify Jones. In a motion filed on September 26, 2008, Jones's counsel requested, among other things, an order requiring the disclosure of all pretrial identifications, and an order requiring the disclosure of all *Brady* evidence. (<u>United States v. Jones</u>, 07-cr-143-1, ECF No. 78 at 2-3.)

Defense counsel obtained information from the Government that there were "two non-identifications which occurred at the time of the initial investigation in 2004." (<u>United States v. Jones</u>, 07-cr-143-1, ECF No. 85 at 3.) There is no indication that counsel interviewed the "non-identifying witnesses," but doing so would have given the witnesses the opportunity to change or qualify their testimony in a manner that would not have been helpful to the defense.

Furthermore, even if the witnesses would have testified that Jones was not the person they saw shoot M.T., defense counsel might have concluded that such testimony would have been outweighed by identification testimony of co-conspirators who were involved in the incident, and who knew Jones and identified him as the shooter. Therefore, counsel's decision not to interview non-identifying witnesses was not in error. <u>See</u> <u>United States v. Ciancaglini</u>, 945 F. Supp. 813, 823 (E.D. Pa. 1996) ("[t]he decisions of which witnesses to call to testify are strategic and therefore left to counsel") (citing ABA Standards

16

of Criminal Justice, Standard 4-5.2; <u>Diggs v. Owens</u>, 833 F.2d
439, 446 (3d Cir. 1987), <u>cert.</u> <u>denied</u>, 485 U.S. 979 (1988)).

    Jones also argued his counsel was ineffective for failing
to investigate and interview four alibi witnesses. A showing of
prejudice based on an attorney's failure to investigate and
interview witnesses must be supported by more than speculation
as to what the witnesses might have said. <u>Duncan v. Morton</u>, 256
F.3d 189, 201-02 (3d Cir. 2001) (quoting <u>Strickland v.</u>
<u>Washington</u>, 466 U.S. 668, 695 (1984)). Jones has not offered any
evidence beyond speculation that the alleged alibi witnesses
would have testified he could not have murdered M.T. because he
was somewhere else when the crime was committed. <u>See</u> <u>id.</u> at
201-02 (holding that in light of petitioner's failure to present
any sworn testimony by his proposed witness, he failed to
establish prejudice as a result counsel's alleged failure).

    Furthermore, based on the totality of the record, Jones's
assertion concerning the testimony of alleged alibi witnesses is
not credible. First, the allegation is contrary to Jones's
expressions of his remorse about M.T. prior to and at
sentencing. Second, the allegation is contrary to Jones's
detailed admission of facts relating to the shooting of M.T. in
the plea allocution. Third, it defies credibility that Jones
would not have raised his alibi defense sooner, particularly at
the plea allocution, when it was explained that he could not

17

plead guilty unless he was in fact guilty. Therefore, the clarity, gravity and character of this alleged error does not favor invalidating the waiver of § 2255 proceedings.

### 2.   Failure to Investigate Exonerating Evidence

Jones argued counsel failed to investigate the following exonerating evidence: (1) Anthony Hicks admitted to killing M.T.;[2] (2) Anthony Hicks incriminated Kashon Mason; and (3) counsel failed to investigate cooperation agreements made by the prosecution.

Jones contends the only evidence the State had that was beneficial to Jones's federal prosecution was from Kashon Mason, and Hicks's confession incriminated Mason. Jones explained that Hicks confessed because he was incarcerated for two murders and under investigation for nine more, and because "he was already locked up, he was ready to take full responsibility of his actions." Once Hicks confessed, in open court during the State court proceedings, according to Jones, he argues there was no reason for the Government to continue its federal investigation. Jones contends that if he had been able to go to trial in State court, Hicks's confession would have exonerated him for killing M.T.

---

[2]   Jones attached a copy of Hicks's written confession to his Reply brief. (Jones v. United States, 13-cv-3748, ECF No. 15 at 48-49.)

According to Jones, he and his counsel were aware of Hicks's confession long before Jones pled guilty to M.T.'s murder, as a predicate act of RICO conspiracy, in federal court. Contrary to Jones's assertion that Hicks's confession would have exonerated him and left no reason for the federal investigation, in an omnibus motion in federal court, Jones's counsel stated: "[t]he government is expected to seek to introduce the testimony of at least two co-conspirators, Kashon Mason and Levon Harris against Mr. Jones at trial." (United States v. Jones, 07-cr-143-1, ECF No. 78-1 at 10.)

Even if Mason's testimony could have been impeached by Hicks's confession, Mason's testimony was expected to be corroborated by Harris's testimony and potentially the testimony of other co-conspirators. Under the circumstances, counsel could have made a strategic decision not to rely on Hicks's confession because it might do more harm than good if the jury discredited it.

Additionally, nothing in the record supports Jones's contention that counsel failed to investigate other exonerating evidence. After the first federal indictment against Jones, the Court ordered the Government to produce:

> (f) any material evidence favorable to the
> defense related to issue of guilt, lack of
> guilt or punishment which is known or that by
> the exercise of due diligence may become known
> to the attorney for the United States, within

19

the purview of Brady v. Maryland and its
progeny.

. . .

(4) Jencks and Giglio Material. The United
States agrees to produce all statements within
the meaning of the Jencks Act, 18 U.S.C. §
3500, and impeachment evidence within the
meaning of Giglio v. United States, 405 U.S.
150 (1972), sufficiently in advance of the
witness's testimony to avoid delay in the
trial. Similarly, the defense shall produce
"reverse Jencks" statements sufficiently in
advance of the witnesses' testimony to avoid
delay in the trial.

(5). Continuing Duty. Any duty of disclosure
and discovery set forth herein is a continuing
one and the attorneys for all parties shall
produce any additional discoverable
information.

(United States v. Jones, 07-cr-143-1, ECF No. 22 at 2-5.)

On September 26, 2008, counsel requested an order
compelling the Government to produce Brady and Jencks Act
materials. (United States v. Jones, 07-cr-143-1, ECF No. 78.)
Jones's counsel sought to suppress any evidence obtained through
testing of the gun believed to have been used by Jones in M.T.'s
murder, on the basis that police lost the gun after they tested
it, but before the defense had the opportunity to examine or
test it. (United States v. Jones, 07-cr-143-1, ECF No. 85 at 2-
3.) After the superseding indictment was unsealed, the Court
ordered disclosure of Brady materials. (United States v. Jones,
07-cr-143-1, ECF No. 214.)

Although the alleged murder weapon was found in a Ford
Probe after the vehicle was used in a robbery days after M.T.'s
shooting, counsel was not ineffective for failing to seek
discovery regarding the vehicle. Even if Kashon Mason's
fingerprints were in the vehicle, this would not have exonerated
Jones for M.T.'s murder. When Jones pled guilty to the murder,
he admitted approaching and shooting M.T. on foot, not from a
vehicle. And the vehicle that Jones admitted was used to look
for S.J., the intended victim when M.T. was shot by mistake, was
a van not a Ford Probe.

Overall, the record does not support Jones's claim that
counsel failed to investigate exonerating evidence. The clarity,
gravity and character of the alleged ineffective assistance of
counsel is entitled to little weight, far from what is required
to overcome Jones's very explicit waiver of his right to bring a
collateral attack in this matter.

3.   Failure to Preserve Jones's Speedy Trial Right

In Ground Two of the motion, Jones alleged the prosecution
violated his Fifth Amendment right to due process and Sixth
Amendment right to a speedy trial by delaying his arrest and
federal indictment for two-and-a-half years after he was charged
with the same murder in State court on June 21, 2005. When Jones
appeared in State court for trial in February 2007, Condon,
Jones's attorney, informed him that federal authorities wanted

him to take the State's plea offer of 25 years. If he did not accept the plea offer, the case would be turned over to federal authorities, who could charge a death penalty crime.

Jones alleged that his counsel was ineffective by failing to file motions, in the federal case, for a speedy trial or a motion to dismiss based on violation of his right to a speedy trial. Jones alleged the 2 ½ year pre-indictment delay in charging him in federal court prevented him from finding additional witnesses to support his defense. Additionally, in this time the vehicle containing the murder weapon was lost, and the weapon used in the murder was destroyed.

Due to the delay in the federal charges, Jones contends counsel never interviewed four alibi witnesses, some of whom are now unavailable. Jones further alleged that delay in prosecution caused him to deteriorate mentally to the point he could not assist in his defense. Finally, Jones alleged the prosecution intentionally delayed because they continued to investigate using an undercover agent, gaining an advantage while prejudicing the defense.

Similarly, in Ground Three, Jones alleged counsel was ineffective by failing to file a dismissal motion under Federal Rule of Criminal Procedure 48, for want of prosecution due to delay in the proceeding.

a.  <u>Pre-indictment Delay</u>

22

Federal Rule of Criminal Procedure 48(b) "is clearly limited to post-arrest situations" in federal court. United States v. Marion, 404 U.S. 313, 316, 320-22 (1971)). It is not applicable to Jones's claim of error by pre-indictment delay.

"When an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date." United States v. Battis, 589 F.3d 673, 678-79 (3d Cir. 2009). Arrest by State officers accompanied by federal authorities is not an "arrest" for purpose of triggering the Sixth Amendment right to a speedy trial for later federal charges. United States v. Iaquinta, 674 F.3d 260, 264 (4th Cir. 1982); United States v. Robertson, 810 F.2d 254, 256 (D.C. Cir. 1987) (same).

The Due Process Clause of the Fifth Amendment governs pre-indictment delay of trial. United States v. Beckett, 208 F.3d 140, 150-51 (3d Cir. 2000). A defendant's "primary guarantee against bringing overly stale criminal charges" is the applicable statute of limitations. Marion, 404 U.S. at 322 (quoting United States v. Ewell, 383 U.S. 116, 122 (1966)). Thus, for relief, the petitioner must show: "(1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) the government deliberately delayed bringing the indictment in order to obtain an improper tactical

advantage or to harass him." Id. "To invoke the extreme sanction

of dismissal of the indictments under the Due Process Clause,

the defendants must prove 'that the government's delay in

bringing the indictment was a deliberate device to gain an

advantage over him and that it caused him actual prejudice in

presenting his defense.'" United States v. Sebetich, 776 F.2d

412, 430 (3d Cir. 1985) (citing United States v. Gouveia, 467

U.S. 180, 192 (1984); United States v. Lovasco, 431 U.S. 783,

789–90 (1977); Marion, 404 U.S. at 324.))

Even if the Court assumed the pre-indictment delay caused

actual prejudice to Jones's defense, which is doubtful, there is

no evidence that the Government delayed the indictment to gain

some improper advantage. Prosecutors may properly delay

obtaining an indictment for investigative purposes. United

States v. Baxt, 74 F. Supp. 2d 425, 429 (D.N.J. 1999) (citing

cases).

In Lovasco, the Supreme Court held:

> First, compelling a prosecutor to file public
> charges as soon as the requisite proof has
> been developed against one participant on one
> charge would cause numerous problems in those
> cases in which a criminal transaction involves
> more than one person or more than one illegal
> act. In some instances, an immediate arrest or
> indictment would impair the prosecutor's
> ability to continue his investigation, thereby
> preventing society from bringing lawbreakers
> to justice. In other cases, the prosecutor
> would be able to obtain additional indictments
> despite an early prosecution, but the

24

> necessary result would be multiple trials
> involving a single set of facts. Such trials
> place needless burdens on defendants, law
> enforcement officials, and courts.
>
> Second, insisting on immediate prosecution
> once sufficient evidence is developed to
> obtain a conviction would pressure prosecutors
> into resolving doubtful cases in favor of
> early and possibly unwarranted prosecutions.

431 U.S. at 792-93.

The initial federal charges in this case involved a complex conspiracy against multiple defendants, which obviously required significant investigation prior to filing. (United States v. Jones, 07-cr-143-1, ECF No. 1.) The Government filed charges against different defendants than those charged in the State case. This is much like the situation described in Lovasco where "an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice."

Jones asserts the federal authorities had an improper motive *in bringing the federal charges* because they used the threat of the death penalty to coerce him to plead guilty to M.T.'s murder in the State prosecution. This does not show an improper motive *to delay the federal charges*. Even if the federal charges were brought while the State charges were ongoing, Jones could have faced the death penalty on the federal charges. Importantly, the federal prosecution could have

25

continued if Jones had been acquitted of the State charges. See United States v. Pungitore, 910 F.2d 1084, 1105 (3d Cir. 1990) ("an acquittal in State court does not preclude the government from charging the offense subject to the acquittal as a predicate act in a subsequent RICO prosecution.")

Finally, the delay in bringing federal charges did not prevent Jones from investigating and developing his defenses to M.T.'s murder, such as the alibi and exonerating evidence he now raises, because he was charged with M.T.'s murder in State court. The prejudice Jones suffered by not bringing the federal charges sooner was that the Government was able to continue its investigation in support of new and greater charges against him and others. This is not an improper motive for pre-indictment delay.

b.   Post-Indictment Delay

Whether a post-indictment delay violates the Sixth Amendment right to a speedy trial is based on a four-part balancing test announced by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972). The four factors are (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and vigor of the defendant's speedy trial right; and (4) the degree of prejudice which the defendant suffered. Id. The factors must be considered along with any other relevant

circumstances. Id. at 533. One of the relevant circumstances here is Jones's waiver of his right to challenge his conviction.

The length of the delay here was from February 2007 until May 2011, when Jones signed the Plea Agreement, a 51-month delay. Longer delays, such as this, can be tolerated when the crime is very serious or complex. Wells v. Petsock, 941 F.2d 253, 257 (3d Cir. 1991) (citing Barker, 407 U.S. at 531). Jones's criminal case was serious, involving a murder and conspiracy to commit murder. The case was also complex, involving a RICO conspiracy of high ranking gang members operating a criminal enterprise. Thus, the first Barker factor does not weigh greatly in favor of a Sixth Amendment violation.

The second factor is the reason for delay. Approximately 36 months of the delay are attributable to the capital case review and Jones's competency proceedings, which ultimately resulted in capital proceedings not being brought against Jones, and Jones being found competent to stand trial. Delay caused by the defense weighs against the defendant's speedy trial right. Battis, 589 F.3d at 679-80. Defense counsel was not ineffective by failing to raise a Sixth Amendment Speedy Trial claim while death penalty and competency proceedings were pursued.

The remainder of the delay was caused by the complexity of the investigation, including two superseding indictments, many defendants, and motion practice. Defense counsel consented to

27

delay due to the complexity of the case and need for more time
to prepare on the following occasions: May 29, 2007 (United
States v. Jones, 07-cr-143-1, ECF No. 37); May 22, 2008 (Id. at
ECF No. 62) and September 23, 2008 (Id. at ECF No. 72); January
22, 2009 (Id. at ECF No. 113), March 24 and 26, 2009 (Id. at ECF
Nos. 120-21); September 16, 2009 (Id. at ECF No. 137); August
10, 2010 (Id. at ECF No. 169); September 30, 2010 (Id. at ECF
No. 172); and December 1 and 3, 2010 (Id. at ECF Nos. 175-76).
After the second superseding indictment, the parties consented
twice more to continuances of the trial date. (Id. at ECF Nos.
214, 250.) Defense counsel's acquiescence in continuances weighs
against the speedy trial right. United States v. Fields, 39 F.3d
439, 443 (3d Cir. 1994). For these reasons, the second Barker
factor, reason for delay, weighs against Jones's speedy trial
right.

The third factor is whether the defendant asserted his
speedy trial right. He did not, and he waived the right to do so
when he pled guilty.

The fourth factor is actual prejudice to the defense.
Anxiety caused by pretrial incarceration can cause actual
prejudice to the defense, but "a defendant must show that his
anxiety extended beyond that which 'is inevitable in a criminal
case.'" Hakeem v. Beyer, 990 F.2d 750 (3d Cir. 1993) (quoting
United States v. Dreyer, 533 F.3d 112, 116 (3d Cir. 1976).

28

Actual prejudice requires production of evidence of psychic injury. Id. Because this Court found that Jones's psychiatric evaluations suggested he was malingering to avoid the death penalty, and Jones has not offered any additional evidence of psychic injury, the Court finds no actual prejudice from anxiety caused by the delay in proceedings.

Furthermore, as discussed above, Jones has not credibly put forth any witnesses or exonerating evidence that became unavailable to him over time. After weighing the four Barker factors, Jones was not denied his Sixth Amendment speedy trial right. For these reasons, counsel was not ineffective by failing to assert a Sixth Amendment Speedy trial claim or request dismissal of the case under Federal Rule of Criminal Procedure 48(b).

C.   Actual Innocence

Finally, in Ground Four, Jones claimed he is actually innocent of killing Michael Taylor because Hicks confessed. The Supreme Court does not recognize a free standing claim of actual innocence as a basis for habeas relief. Wright v. Superintendent Somerset SCI, 601 F. App'x 115, 119 (3d Cir. 2015) (per curiam) (citing McQuiggin v. Perkins, 133 S. Ct. 1924, 1936 (2013)). Even if the Court recognized a freestanding actual innocence claim, "[t]o establish innocence, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not

that no reasonable jury would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

Hicks's confession does not exonerate Jones from M.T.'s murder because M.T. was killed by two shooters. Although Hicks might have testified that Kashon Mason, and not Jones, was the second shooter, the defense expected that Kashon Mason and Levon Harris, and potentially other co-conspirators, would testify that Jones was the shooter. Therefore, it was not more likely than not that a reasonable jury would not have convicted Jones based on Hicks's confession. The Court finds that Jones's waiver of his right to challenge his conviction under 28 U.S.C. § 2255 is enforceable, and his § 2255 motion is denied.

D. Certificate of Appealability

The Court must now assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing requiring to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Based on the discussion above, reasonable jurists would not find it debatable that defense counsel provided ineffective assistance of counsel that prejudiced the defense, and rendered Jones's waiver of his right to collateral review invalid.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (ECF No. 5) is DENIED, and the Court SHALL NOT ISSUE a certificate of appealability. An appropriate Order shall follow.

Dated: _____1/7/16_____

_____
STANLEY R. CHESLER
United States District Judge